[Cite as *State v. Crawley*, 2014-Ohio-1949.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100145**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HERBERT Q. CRAWLEY

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-570726

**BEFORE:**  E.T. Gallagher, J., S. Gallagher, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**  May 8, 2014

**ATTORNEY FOR APPELLANT**

Christopher M. Kelley
75 Public Square, Suite 700
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Aleksandra Chojnacki
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Herbert Q. Crawley ("Crawley"), appeals his domestic violence and abduction convictions. We find no merit to the appeal and affirm.

**{¶2}** Crawley was charged with one count of felonious assault, one count of domestic violence, and one count of abduction. The domestic violence charge included a furthermore specification alleging that Crawley knew the victim was pregnant at the time of the offense. Crawley waived his right to a jury trial and the case proceeded to a bench trial.

**{¶3}** The victim, Kimberly Torres ("Torres"), testified that she and Crawley lived together from approximately October 2012 until January 2013. In December 2012, Torres learned she was pregnant. Crawley had purchased a home pregnancy test for Torres because she was experiencing pregnancy-like symptoms, and the test results were positive.

**{¶4}** On January 12, 2013, after playing slot machines for a couple hours at the Horseshoe Casino, Torres and Crawley began arguing and decided to return home. Crawley, who was angry, drove the truck at excessive speeds. Torres continually asked him to slow down and stop, but he refused.

**{¶5}** Eventually Crawley stopped at a red light, and Torres exited the truck. Crawley drove the truck onto the curb where Torres was standing and knocked her over. He picked her up, put her back in the truck then backhanded her in the mouth and continued to argue as he drove home. Although the truck "bumped" Torres, she did not

believe Crawley intended to hit her with the vehicle. The argument continued inside the house as Crawley placed his hands on her neck and choked her to the point of near unconsciousness. Meanwhile, Torres's daughter, who was in the house, called the police.

{¶6} Officer Jonathan B. Hejny ("Hejny") testified that he responded to Torres's house and found her in an upstairs bedroom with a split and swollen lip. According to Hejny, Torres was "scared," and "crying." He explained: "[S]he was very intimidated and scared of the suspect, Mr. Crawley. That was my impression, she was just intimidated." Another officer took a photograph of Torres's face that depicts the injury and is included in the record.

{¶7} Torres made a statement to police regarding the incident the following morning. She testified that when she awoke that morning, her neck was bruised and sore. However, the detective who interviewed her in her home did not take any photographs of her neck. Torres refused medical treatment on the night of the incident because she did not want to go to the hospital. She also declined to seek medical treatment when she suffered a miscarriage seven days after the incident.

{¶8} The trial court granted Crawley's Crim.R. 29 motion for acquittal in part and dismissed the felonious assault charge. However, the court found Crawley guilty of abduction and domestic violence, with the pregnancy specification. The court sentenced Crawley to nine months on the abduction charge and six months on the domestic violence

charge to be served concurrently. Crawley now appeals and raises three assignments of error.

## Pregnancy Specification

**{¶9}** In the first assignment of error, Crawley argues there was insufficient evidence to establish the pregnancy specification.

**{¶10}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶11}** Crawley was convicted of domestic violence in violation of R.C. 2919.25(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(D)(5) provides the furthermore specification of which Crawley was found guilty and states, in relevant part, that "if the offender knew that the victim of the violation was pregnant at the time of the violation, a violation of division (A) or (B) of this section is a felony of the fifth degree, and the court shall impose a mandatory prison term on the offender."

**{¶12}** Crawley contends his conviction on the furthermore specification was not supported by sufficient evidence because there were no medical records to corroborate Torres's testimony that she was pregnant. He also argues Torres's testimony was not

credible because she did not seek prenatal care during the early weeks of her pregnancy. However, in a sufficiency analysis we view the evidence in a light most favorable to the state, without regard to credibility. *Jenks*, at paragraph two of the syllabus. Torres testified that not only was she pregnant, but Crawley knew she was pregnant because he purchased the pregnancy test and was aware of the results.

{¶13} Furthermore, medical records were not required to prove that Crawley violated the pregnancy specification. As in many cases, credible witness testimony is sufficient to establish all the elements of a crime. For example, criminal liability in rape cases are often established solely on the victim's testimony. *In re C.T.*, 8th Dist. Cuyahoga No. 97278, 2013-Ohio-2458; *State v. McComas*, 5th Dist. Tuscarawas No. 2013 AP 03 0013, 2013-Ohio-3180 (stating that "[a]s with most, if not all, cases of rape, it is generally a 'he said, she said' situation.") Therefore, all the elements of the specification were established through credible witness testimony, and this evidence, by itself, is sufficient to sustain the pregnancy specification.

{¶14} The first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶15} In the second assignment of error, he contends his domestic violence conviction with the pregnancy specification was against the manifest weight of the evidence.

{¶16} A challenge to the manifest weight of the evidence attacks the verdict in light of the state's burden of proof beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). When reviewing a claim that the judgment was against the manifest weight of the evidence, we review the entire record, weigh both the evidence and all the reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Patterson,* 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 48, citing *Thompkins* at 387.

{¶17} It is difficult to overcome the manifest weight standard because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "'believe or disbelieve any witness or accept part of what a witness says and reject the rest.'" *State v. Flachbart*, 8th Dist. Cuyahoga No. 99248, 2013-Ohio-3807, ¶ 13, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*

{¶18} In this case, there is substantial evidence upon which the court could reasonably conclude that the furthermore specification was proven beyond a reasonable doubt. Torres testified she suspected she was pregnant because she experienced the

same common pregnancy symptoms that she experienced in both her prior pregnancies. Crawley purchased a pregnancy test for her to determine whether her symptoms were in fact caused by a pregnancy. Although she admitted she did not seek prenatal care, she explained "[b]ecause I did not plan on keeping it."

{¶19} Torres also testified that she called "the nurse on call" at MetroHealth Medical Center on January 19, 2013, because she was bleeding heavily and believed she was having a miscarriage. Torres did not seek any medical treatment for the miscarriage because she did not want to go to the hospital. She had previously testified that she also declined medical treatment after the domestic violence incident because she did not want to go to the hospital. Torres's testimony contained many details and provides a reasonable explanation for her decision not to seek medical treatment. Under these circumstances, we cannot say that Crawley's conviction on the pregnancy specification was a manifest miscarriage of justice or that the evidence adduced at trial weighs heavily in favor of acquittal.

{¶20} Therefore, the second assignment of error is overruled.

### Abduction

{¶21} In the third assignment of error, Crawley argues his abduction conviction was against the manifest weight of the evidence. He contends Torres's version of the facts are impossible and therefore incredible.

{¶22} Crawley was convicted of abduction in violation of R.C. 2905.02(A)(2) which states that "[n]o person, without privilege to do so, shall knowingly * * * [b]y force

or threat, remove another from the place where the other person is found." Torres testified that Crawley refused to stop and let her out of the truck when he was driving at excessive speeds. She further testified that he drove approximately 10 or 15 minutes from the Horseshoe Casino before finally coming to a stop near the West Side Market. Crawley argues there is no way it would take 10 or 15 minutes to drive from the Horseshoe Casino to the West Side Market, especially if the driver is speeding. Therefore, he argues, Torres's testimony is not credible.

{¶23} However, the witness's estimation of time must be weighed with all the other evidence and the reasonable inferences that may be made based on the evidence. *Thompkins* at 387. Torres testified:

> Q: While you were in the vehicle with Mr. Crawley coming back home from the Horseshoe Casino, did you feel that you were able to leave the vehicle when you wanted ?
>
> A: No.
>
> Q: And why not?
>
> A: I mean, he was — he was speeding. And I told him, you know, let me out of this car.
>
> Q: And did he let you out when you asked him to?
>
> A: No.
>
> Q: How long * * * was he driving, if you can approximate, before you did come to that red light?
>
> A: I said about 10, 15 minutes.
>
> Q: From the time you —

A: Left the casino.

Q; From the time that you asked him to stop, how long had passed?

A: I mean, I was continually asking him to stop from when we left the casino because he was speeding.

**{¶24}** There was no evidence in the record establishing the distance from the casino to the West Side Market upon which the trier of fact could determine whether Torres's testimony was unreasonable. There was also no evidence of a different estimation of time to contradict Torres's testimony. Further, Torres's testimony regarding how much time elapsed was merely an estimation or opinion.

**{¶25}** The trial court was in the best position to view the witness, assess her credibility, and decide what weight to attribute to her approximation. Even if her estimate is a little longer than one might expect, a difference of a few minutes is not outside the realm of reason. We, therefore, cannot say that the trial court lost its way in finding Torres's testimony credible.

**{¶26}** The third assignment of error is overruled.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR